UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD J. ERICKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KERYX BIOPHARMACEUTICALS, INC., GREGORY P. MADISON and SCOTT A. HOLMES,<br><br>Defendants. | Civil Action No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Richard J. Erickson has alleged the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Keryx Biopharmaceuticals, Inc. ("Keryx" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of purchasers of the common stock of Keryx between March 2, 2016 and July 29, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District, and Keryx has executive corporate offices in this District.

5. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to,

the mails, interstate telephone communications and the facilities of the NASDAQ, a national securities exchange located in this District.

## PARTIES

6. Plaintiff Richard J. Erickson, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Keryx during the Class Period and has been damaged thereby.

7. Defendant Keryx is a biopharmaceutical company. Keryx common stock is listed and trades on the NASDAQ, an efficient market, under the ticker symbol "KERX." As of April 22, 2016, the Company had more than 105.8 million shares issued and outstanding.

8. Defendant Gregory P. Madison ("Madison") is, and was at all relevant times, Keryx's Chief Executive Officer ("CEO") and President and a member of the Keryx Board of Directors.

9. Defendant Scott A. Holmes ("Holmes") is, and was at all relevant times, Keryx's Chief Financial Officer ("CFO") and Treasurer.

10. Defendants Madison and Holmes are collectively referred to herein as the "Individual Defendants."

11. During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Keryx, were privy to confidential and proprietary information concerning Keryx, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Keryx, as discussed below. Because of their positions with Keryx, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Keryx's business.

13. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts, and through them to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

14. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Keryx's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Keryx common stock would be based

upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15. The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Keryx common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Keryx's business, operations and management and the intrinsic value of Keryx common stock; and (ii) caused plaintiff and members of the Class to purchase Keryx common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Keryx during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

17. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Keryx common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Keryx or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

18. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

19. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

20. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Keryx;

(c) whether the price of Keryx common stock was artificially inflated during the Class Period; and

(d) to what extent the members of the Class have sustained damages and the proper measure of damages.

21. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

**Background**

22. Defendant Keryx develops and markets treatments for renal disease. The Company's lead product, Auryxia (ferric citrate), is an oral, ferric iron-based compound that is used for the control of serum phosphorus levels in patients with chronic kidney disease ("CKD") on dialysis. The industry standards that are prescribed to most patients with CKD are Renagel and Renvela – both from rival drug developer Sanofi. Sanofi's sales revenues for its top seller last year alone were $232 million.

23. In November 2005, Keryx acquired the rights to market Auryxia from Panion & BF Biotech, Inc. ("Panion"), pursuant to a license agreement. Under the Panion license agreement, Keryx acquired the exclusive worldwide rights, excluding certain Asian-Pacific countries, for the development and marketing of ferric citrate.

24. On September 5, 2014, Keryx announced that the U.S. Food and Drug Administration ("FDA") had approved the commercial distribution of ferric citrate in the United States. On November 17, 2014, the Company announced it would market ferric citrate in the United States under the name Auryxia. On December 22, 2014, the Company announced it had commenced its commercial launch in the United States.

25. In January 2015, the Company began recognizing revenues on sales of Auryxia in the United States. By the end of 2015, Keryx reported $10.1 million in Auryxia sales, representing approximately 18,000 prescriptions.

26. Unbeknownst to investors, by the start of the Class Period, Norwich Pharma Services, Keryx's sole contract manufacturer of Auryxia, had begun experiencing difficulties converting active pharmaceutical ingredient, or API, to finished drug product, which had resulted in variable yields of the drug as compared to its historical rates. As a result, Keryx was actively managing

supply levels for Auryxia in order to ensure that it had sufficient inventory. During the Class Period, defendants did not disclose that Keryx's sole supplier of Auryxia had experienced manufacturing issues, which threatened the Company's ability to maintain sufficient inventory levels.

**Materially False and Misleading Statements**

27. On February 25, 2016, Keryx issued a press release announcing its fourth quarter and fiscal 2015 financial results for the year ended December 31, 2015. The Company reported Auryxia product sales of $4.8 million in the fourth quarter and $10.1 million in sales during fiscal 2015. Keryx also provided financial guidance for fiscal 2016 U.S. sales of Auryxia in the range of $31 to $34 million, a significant increase over the $10.1 million in Auryxia sales reported that day for fiscal 2015. In support of the strong sales guidance, Keryx stated in its release that "[t]he company expect[ed] ***sales to ramp throughout the year*** as it realizes the full impact of its expanded sales force."

28. Later that same day, Keryx held a conference call with analysts and investors to discuss financial results for the fourth quarter and full year of 2015 and provide a review on the Auryxia launch. During the conference call, in his opening remarks, defendant Madison emphasized the ongoing success of Keryx's Auryxia rollout and how that had placed the Company on a strong growth trajectory for 2016, stating in pertinent part as follows:

> ***The senior management team and I see 2016 as a year of execution.*** This year should define Auryxia's long term potential in the path to achieving our vision of ***becoming a leading renal company***. We see three main drivers of Keryx's long term growth, today we remain highly focused on advancing the launch for Auryxia in the dialysis setting. We have a near term opportunity to expand Auryxia's label into another indication of the treatment of pre dialysis CKD patients with iron deficiency anemia, and as we look to the future, we have the opportunity to leverage our commercial infrastructure by in-licensing assets that are complementary to Auryxia.

29. Defendant Holmes provided 2016 guidance, stating in pertinent part as follows:

> ***We are encouraged with the solid fundamentals we see with Auryxia, given the continued growth in prescriptions and the experience we gained in 2015,***

> ***coupled with our market research and expanded sales force, we believe it is an appropriate time to provide sales guidance***. As you saw in today's press release, we expect full year 2016 Auryxia net US product sales to be in the range of $31 million to $34 million. We exited 2015 with a 1.4% share of the phosphate binder market, and this guidance range would give us 2016 exit share approaching 3%. . . .
>
> ***As we noted in the press release we expect to see demand growth of between 20% and 35% on a sequential quarter basis, ramping as we realize the full impact of our sales force***.

30. Defendants Madison's and Holmes' comments about the Company being on track to achieve its strong 2016 financial guidance were followed up by those of Abe Ceesay, Keryx's then-Vice President, Sales & Marketing Operations ("Ceesay"), who stated in pertinent part as follows:

> ***We are confident that as we generate more demand, patient claims will continue to be paid with copays, that are affordable for the patient***. Importantly, we are encouraged by the positive feedback from physicians as they gain more experience with Auryxia. Physicians continue to report high patient persistency rates of approximately 70%, with no reported discontinuations due to lack of efficacy. ***With these solid fundamentals in place, along with the efforts of our expanded sales force ramping up over the course of 2016, we feel confident in our ability to support our net sales guidance for 2016***.

31. John Neylan, Keryx's Chief Medical Officer, concluded Keryx's positive mantra in management's opening comments, stating in pertinent part as follows:

> The possibility for Auryxia to treat two important complications of CKD, ***could offer a significant improvement for*** patients, providers and payers, ***as well as creating significantly enhanced value for the Auryxia franchise***.

32. Later in the call, defendant Holmes affirmed that the Company would see sequential growth in the range of 20%-35% throughout 2016, thus tripling its 2015 Auryxia sales during 2016, stating in pertinent part as follows:

> First of all, with regards to the 20% to 35% range of sequential quarterly growth, the way to think about that is throughout the year, we'll see various percentages in growth quarter-over-quarter. ***Those percentages from one quarter to another overall when you look at 2016, those percentages will be in the range from 20% to 35% as the year progresses, so I think on average, you can see the $31 million to $34 million guidance range, obviously represents three times 2015 sales. So as you build your models, per se, around the year, the quarterly growth rates will be between 20% and 35% sequentially***.

33. The Class Period begins on March 2, 2016, the first date on which Keryx stock traded as high as $4.80 per share in intraday trading.

34. On March 11, 2016, the Company announced that Ceesay, Keryx's Vice President, Sales & Marketing Operations, had resigned effective March 25, 2016.

35. On April 1, 2016, Keryx issued a press release announcing that four of its current board members, Michael Tarnok, Jack Kaye, Senator Wyche Fowler, Jr. and Joseph Feczko, would not stand for re-election at Keryx's 2016 Annual Meeting and that Keryx was reducing the size of the Company's Board to six members.

36. On April 28, 2016, Keryx issued a press release announcing its first quarter 2016 results for the period ended March 31, 2016 and reiterated its February 2016 financial guidance. The release quoted defendant Madison as stating in pertinent part that "'[t]hrough the expansion of [its] field team, [Keryx was] able to increase the reach and frequency of contact with the treating community, and [as a result, he remained] confident that with their efforts ***[Keryx would] continue to increase uptake of Auryxia in people with chronic kidney disease (CKD) on dialysis***.'" The release also quoted defendant Holmes as stating in pertinent part that, "'[a]s a result of [its] continued focus on commercial execution and fiscal discipline, [Keryx] met or exceeded all of [its] internal financial goals in the first quarter and, therefore, ***[was] progressing nicely toward achieving [its] previously stated 2016 full year financial objectives***.'"

37. On April 28, 2016, Keryx filed its Form 10-Q for the quarter ended March 31, 2016 with the SEC, which was signed by defendant Holmes and certified pursuant to the Sarbanes Oxley Act of 2002 by defendants Madison and Holmes (the "10-Q"). The 10-Q purported to warn that "***[i]f*** any of [its] suppliers, including the source of Auryxia drug product, were to limit or terminate production, or otherwise fail to meet the quality or delivery requirements needed to supply Auryxia

at levels to meet market demand, [Keryx] ***could*** experience a loss of revenue, which ***could*** materially and adversely impact [its] results of operations." The purported risk warning, however, was materially false and misleading, as the Company's third-party supplier of Auryxia was ***already*** "fail[ing] to meet the . . . delivery requirements needed to supply Auryxia at levels to meet market demand."

38. The price of Keryx common stock rose throughout the Class Period based on defendants' materially false and misleading statements and omissions, reaching a Class Period high of $7.80 per share in intraday trading on July 20, 2016.

39. The statements referenced above in ¶¶27-32 and 36-37 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a) Norwich Pharma, the Company's sole third-party contract manufacturer for Auryxia, was experiencing manufacturing difficulties which would require Norwich Pharma to cease manufacture of Auryxia while the problems were rectified;

(b) without Norwich Pharma manufacturing Auryxia, Keryx would not have enough inventory of Auryxia to meet its projected sales guidance – in other words, Keryx's ability to meet its stated sales guidance was dependent on its sole contract manufacturer's ability to continue manufacturing Auryxia;

(c) Keryx was attempting to get another third-party manufacturer for Auryxia approved by the FDA and that approval would not come until at least November 2016; and

(d) based on the foregoing, defendants lacked a reasonable basis for their positive statements about the Company, its business and financial prospects, and its ability to meet its 2016 guidance during the Class Period.

40. On August 1, 2016, before the open of trading, Keryx issued a release and conducted a conference call with investors and stock analysts to announce that due to previously undisclosed manufacturing and supply issues, the Company was facing an imminent supply interruption for Auryxia until at least October 2016 and was withdrawing its fiscal 2016 guidance. The Company also disclosed that it had been attempting to bring a second FDA-approved supplier of Auryxia online, but that would not happen until at least November 2016.

41. According to Keryx, a "few months" prior to its August 1, 2016 disclosure, Keryx's sole third-party supplier had "beg[u]n experiencing difficulties converting active pharmaceutical ingredient, or API, to finish[ed] drug product, which resulted in variable yields, as compared to [its] historical rate." As a result, the Company "had been manag[ing] supply levels" for Auryxia. In fact, the supply level for Auryxia was so low that patient supplies of the drug were expected to be interrupted "as early as late th[at] week, [or] early next week." The release issued that day further stated in pertinent part as follows:

> Keryx . . . today announced that an ***interruption in the supply of Auryxia***® (ferric citrate) tablets ***is imminent*** due to a production-related issue converting active pharmaceutical ingredient (API) to finished drug product. Keryx expects to make Auryxia available to patients when supply of Auryxia is back to adequate levels, which ***Keryx anticipates will be during the fourth quarter of 2016***.
>
> * * *
>
> **About the Supply Interruption**
>
> Keryx has determined that a supply interruption is going to occur due to a production-related issue in converting API to finished drug product ***at its contract manufacturer***. ***This issue has resulted in variable production yields of finished drug product and, as a result, the company has exhausted its reserve of finished drug product***. At this time, current inventories of Auryxia are not sufficient to ensure uninterrupted patient access to this medicine. The supply interruption does not affect the safety profile of currently available Auryxia. Keryx is working with ***its existing manufacturer*** to resolve the production-related issue and rebuild adequate supply. ***In addition, since approval of Auryxia in 2014, Keryx has been working to bring a secondary manufacturer online to supply finished drug product. The company recently filed for approval of this manufacturer with the U.S. Food and***

> ***Drug Administration (FDA) and the FDA has assigned a Prescription Drug User Fee Act (PDUFA) action date of November 13, 2016. The company expects to restore adequate supply of Auryxia and to make Auryxia available to patients during the fourth quarter of 2016.***
>
> * * *
>
> **2016 Financial Guidance**
>
> ***As a result of the supply interruption, Keryx is withdrawing its 2016 financial guidance.***

42. On this news, the market price of Keryx common stock declined precipitously, falling $2.64 per share, or 36%, from its close of $7.36 per share on July 29, 2016 to close at $4.72 per share on August 1, 2016, after trading as low as $4.54 per share in intraday trading, on unusually high trading volume of almost 14 million shares, more than 12.5 times the average daily volume over the preceding ten trading days.

43. The market for Keryx common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Keryx common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Keryx common stock relying upon the integrity of the market price of Keryx common stock and market information relating to Keryx, and have been damaged thereby.

44. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Keryx common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

45. At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Keryx's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Keryx and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

46. As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company or in their own name during the Class Period were materially false and misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Keryx, their control over, and/or receipt and/or modification of Keryx's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

47. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the

knowledge and complicity or, at least, the reckless disregard of the personnel at the highest levels of the Company, including the Individual Defendants.

48. Individual Defendants, because of their positions with Keryx, controlled the contents of the Company's public statements during the Class Period. Each defendant was provided with or had access to copies of the documents alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, these defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of these defendants is responsible for the accuracy of Keryx's corporate statements and is therefore responsible and liable for the representations contained therein.

**LOSS CAUSATION/ECONOMIC LOSS**

49. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Keryx common stock and operated as a fraud or deceit on Class Period purchasers of Keryx common stock by failing to disclose and misrepresenting the adverse facts detailed herein. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Keryx common stock fell precipitously as the prior artificial inflation came out of the stock price.

50. As a result of their purchases of Keryx common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused

Keryx common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $7.80 per share in intraday trading on July 20, 2016.

51. By failing to disclose to investors the adverse facts detailed herein, defendants presented a misleading picture of Keryx's business and prospects. When the truth about the Company was revealed to the market, the price of Keryx common stock fell precipitously. These declines removed the inflation from the price of Keryx common stock, causing real economic loss to investors who had purchased Keryx common stock during the Class Period.

52. The declines in the price of Keryx common stock after the corrective disclosures came to light were a direct result of the nature and extent of defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price declines in Keryx common stock negate any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Keryx common stock and the subsequent significant decline in the value of Keryx common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

53. At all relevant times, the market for Keryx common stock was an efficient market for the following reasons, among others:

(a) Keryx common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b) as a regulated issuer, Keryx filed periodic public reports with the SEC and the NASDAQ;

(c) Keryx regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Keryx was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

54. As a result of the foregoing, the market for Keryx common stock promptly digested current information regarding Keryx from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all purchasers of Keryx common stock during the Class Period suffered similar injury through their purchase of Keryx common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

55. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as forward-looking statements when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was

false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Keryx who knew that those statements were false when made.

**COUNT I**

**Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

56. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57. During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

59. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Keryx common stock. Plaintiff and the Class would not have purchased Keryx common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

60. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Keryx common stock during the Class Period.

## COUNT II

## Violation of §20(a) of the Exchange Act Against the Individual Defendants

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of Keryx within the meaning of §20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Keryx, and their ownership of Keryx common stock, the Individual Defendants had the power and authority to cause Keryx to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: August 4, 2016

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARY K. BLASY

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

HOLZER & HOLZER, LLC
COREY D. HOLZER
MARSHALL P. DEES
1200 Ashford Parkway, Suite 410
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mdees@holzerlaw.com

Attorneys for Plaintiff

I:\Keryx Biopharmaceuticals\Pleadings\Cpt Keryx Bio.docx

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| KERX | 07.20.16 | 10,000 | 7.74/SHARE |
| | 07.06.16 | 1,500 | 6.87/SHARE |
| | 07.01.16 | 2,000 | 6.69/SHARE |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| KERX | 08.02.16 | 10,000 | 4.20/SHARE |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 day of AUGUST, 2016 in ALLEN, TX.
City State

(Signature) X [signature]

(Print Name) RICHARD ERICKSON